# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| In re<br><br>COLORADO CUSTOMWARE, INC.<br><br>Debtor. | Bankruptcy Case No. 13-22227-EEB<br><br>Chapter 11 |

## MOTION FOR APPROVAL OF DEBTOR-IN-POSSESSION FINANCING

Colorado Customware, Inc. ("CCI" or the "Debtor"), files this Motion pursuant to Bankruptcy Code §§ 364 (c) and (d) for an Order Approving Debtor-In-Possession Financing the Amount of $100,000. In support of this Motion, the Debtor states as follows:

1.   On July 17, 2013, CCI filed its voluntary Chapter 11 case. It is acting as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2.   CCI recently filed a Motion to Approve the Sale of Substantially all of Assets (along with assignment of related contracts), which Motion is pending. In the meantime, the Debtor has been operating its business in the ordinary course.

### Proposed Lending Terms

3.   Although the Debtor had anticipated being able to operate its business on cash collected, an operational shortfall has arisen and further shortfalls are projected in the medium term. As a result, the Debtor is seeking to expedite its sale process. To bridge through a sale process, the Debtor also requires a limited amount of lending pursuant to Bankruptcy Code § 364. The Debtor's pre-petition secured lender, Verus Bank of Commerce ("Verus"), has agreed to provide $100,000 debtor-in-possession financing to the Debtor subject to Court approval. Copies of the proposed lending documents are attached hereto and the essential terms and conditions of the lending are as follows:

016844\0001\10749954.4

| | |
|---|---|
| Principal Amount: | $100,000 |
| Advances: | In Lender's discretion |
| Interest: | 10% per annum; default 12% per annum |
| Fees: | None |
| Maturity: | Earlier of December 15, 2013 or closing of pending § 363 Sale |
| Security: | First lien on assets in which Verus presently holds a first perfected security interest including accounts receivable |
| | Superpriority claim pursuant to 11 U.S.C. § 364(c) |
| | Each subject to carveout |
| Carveout: | $50,000 |
| Defaults: | Failure to pay upon maturity |
| Releases: | None |
| Waivers: | None |

**Necessity for Borrowing and in Compliance with Bankruptcy Code § 364**

4.  The proposed lending is the purpose of maintaining normal operations not to engage in any extraordinary transactions. The Debtor, in its business judgment, believes that maintaining the going concern is critical to preservation of values. Verus will not be made whole in the proposed Section 363 Sale and, by its agreement to advance these funds, shows that maintaining the going concern is critical to maximizing the value of the assets as well.

5.  Any other party asserting a lien in the property is either under secured and the lien is void pursuant to 11 U.S.C. § 506(d). In the alternative, preservation of the going concern and asset values preserves whatever hope of a secured position or recovery on account of any secured position that they might have. In the lending, Verus seeks only a first position on collateral in

2

which it currently holds a first position. In effect, Verus is making an advance to protect its collateral position, as is allowed under typical secured lending documents. In any case, a debtor cannot obtain the lending on other terms, or from other lenders.

6. Because of timing issues, pursuant to § 364(a), Verus is advancing to Debtor $25,000 or less for payroll and other ordinary course expenses by October 1, 2013,, which advance may be repaid through this secured loan or ordinary course collections of the Debtor.

WHEREFORE, the Debtor requests that the Court authorize borrowing of up to $100,000 on the terms and conditions described herein and that the Court grant such other relief as is just and equitable.

Dated this 27th day of September 2013.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

*s/Michael J. Pankow*
Michael J. Pankow, #21212
410 17th Street, Suite 2200
Denver, Colorado 80202
Tel: (303) 223-1100
Fax: (303) 223-1111
mpankow@bhfs.com

*Attorneys for the Debtor*

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 27, 2013, I served by prepaid first class mail a copy of the **MOTION FOR APPROVAL OF DEBTOR-IN-POSSESSION FINANCING** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED.R. BANKR. P. and the L.B.R. at the following addresses:

Leo M. Weiss
US Trustee's Office
999 18th St., Ste. 1551
Denver, CO 80202

Colorado Customware, Inc.
736 Whalers Way Bldg F100
Fort Collins, CO 80525

Lori Burge
418 Spinnaker Lane
Fort Collins, Colorado 80525

Perkins Coie LLP
Attention: Norton Cutler
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Fax: 303.291.2400

Robert T. Cosgrove
303 E. 17th Ave.
Ste. 800
Denver, CO 80203-1261

Charles A. Dale, III
One Lincoln Street
Boston, MA 02111

Zach Shaw
2001 S. State St., S-3600
Salt Lake City, UT 84190

Gill Geldreich
PO Box 20207
Nashville, TN 37202-0207

Lori L Winkelman
2 North Central Ave
Phoenix, AZ 85004

Joseph E. Shickich, Jr
1001 4th Ave., Ste. 4500
Seattle, WA 98154-1065

Kimberley H. Tyson
Ireland Stapleton Pryor & Pascoe PC
717 17th Street, Suite 2800
Denver, CO 80202


/s/Connie Windholz
Connie Windholz, Paralegal

4

# SECURITY AGREEMENT

This Agreement, dated as of September 30, 2013, is made by and between Colorado Customware, Inc. (the "Debtor"), and Verus Bank of Commerce (the "Secured Party").

Pursuant to a Promissory Note dated as of September 30, 2013 (as the same may be amended, supplemented or restated from time to time, the "Note"), the Secured Party has made one or more loans to the Debtor.

In connection with the Note, the Secured Party has required the execution and delivery of this Agreement by the Debtor.

ACCORDINGLY, in consideration of the mutual covenants contained in the Note and herein, the parties hereby agree as follows:

1. <u>Definitions</u>. The following terms have the meanings set forth below or in the referenced Section of this Agreement:

"Collateral" means the property described on Exhibit A, whether now owned or hereafter acquired; together with (i) all substitutions and replacements for and products of any of the foregoing; (ii) in the case of all goods, all accessions; (iii) all accessories, attachments, parts, equipment and repairs now or hereafter attached or affixed to or used in connection with any goods; (iv) all warehouse receipts, bills of lading and other documents of title now or hereafter covering such goods; and (v) proceeds of any and all of the foregoing.

"Obligations" means all obligations under the Note.

"UCC" means Uniform Commercial Code as in effect from time to time in the State of Colorado.

2. <u>Security Interest</u>. The Debtor hereby grants the Secured Party a security interest (the "Security Interest") in the Collateral to secure payment of the Obligations.

3. <u>Representations, Warranties and Agreements</u>. The Debtor hereby represents, warrants and agrees as follows:

(a) *Title*. The Debtor (i) has absolute title to each item of Collateral in existence on the date hereof, free and clear of all Liens except Permitted Liens, (ii) will have, at the time the Debtor acquires any rights in Collateral hereafter arising, absolute title to each such item of Collateral free and clear of all liens, (iii) will keep all Collateral free and clear of all liens, and (iv) will defend the Collateral against all claims or demands of all persons other than the Secured Party. The Debtor will not sell or otherwise dispose of the Collateral or any interest therein without the prior written consent of the Secured Party.

(b)     **Secured Party's Right to Take Action**. The Debtor authorizes the Secured Party to file from time to time where permitted by law, such financing statements against collateral as the Secured Party deems necessary or useful to perfect the Security Interest.

4.     Events of Default. Each of the following occurrences shall constitute an event of default under this Agreement (herein called "Event of Default"):  (i) an Event of Default shall occur under the Note; or (ii) the Debtor shall fail to pay any or all of the Obligations when due or (if payable on demand) on demand; or (iii) the Debtor shall fail to observe or perform any covenant or agreement herein binding on it.

5.     Remedies upon Event of Default. Upon the occurrence of an Event of Default and at any time thereafter, the Secured Party may exercise any one or more of the following rights and remedies: (i) declare all unmatured Obligations to be immediately due and payable, and the same shall thereupon be immediately due and payable, without presentment or other notice or demand; (ii) exercise and enforce any or all rights and remedies available upon default to a secured party under the UCC, including but not limited to the right to take possession of any Collateral, proceeding without judicial process or by judicial process (without a prior hearing or notice thereof, which the Debtor hereby expressly waives), and the right to sell, lease or otherwise dispose of any or all of the Collateral.

6.     Notices; Requests for Accounting. All notices and other communications hereunder shall be in writing and shall be (a) personally delivered, (b) sent by first class United States mail, (c) sent by overnight courier of national reputation, or (d) transmitted by telecopy, in each case addressed or telecopied to the party to whom notice is being given at its address or telecopier number as set forth below its signature or, as to each party, at such other address or telecopier number as may hereafter be designated by such party in a written notice to the other party complying as to delivery with the terms of this Section.

7.     Miscellaneous. This Agreement can be waived, modified, amended, terminated or discharged, and the Security Interest can be released, only explicitly in a writing signed by the Secured Party, and, in the case of amendment or modification, in a writing signed by the Debtor. A waiver signed by the Secured Party shall be effective only in the specific instance and for the specific purpose given. Mere delay or failure to act shall not preclude the exercise or enforcement of any of the Secured Party's rights or remedies. All rights and remedies of the Secured Party shall be cumulative and may be exercised singularly or concurrently, at the Secured Party's option, and the exercise or enforcement of any one such right or remedy shall neither be a condition to nor bar the exercise or enforcement of any other. The Secured Party's duty of care with respect to Collateral in its possession (as imposed by law) shall be deemed fulfilled if the Secured Party exercises reasonable care in physically safekeeping such Collateral or, in the case of Collateral in the custody or possession of a bailee or other third person, exercises reasonable care in the selection of the bailee or other third person, and the Secured Party need not otherwise preserve, protect, insure or care for any Collateral. This Agreement shall be binding upon and inure to the benefit of the Debtor and the Secured Party and their respective successors and assigns and shall take effect when signed by the Debtor and delivered to the Secured Party, and the Debtor waives notice of the Secured Party's acceptance hereof. This Agreement shall be governed by and construed in accordance with the substantive laws (other than conflict laws) of the State of Colorado. If any provision or application of this Agreement is

held unlawful or unenforceable in any respect, such illegality or unenforceability shall not affect other provisions or applications which can be given effect and this Agreement shall be construed as if the unlawful or unenforceable provision or application had never been contained herein or prescribed hereby. All representations and warranties contained in this Agreement shall survive the execution, delivery and performance of this Agreement and the creation and payment of the Obligations.

**THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED ON OR PERTAINING TO THIS AGREEMENT.**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

| Colorado Customware, Inc. | Verus Bank of Commerce |
|---|---|
| By _____<br>　　Lori D. Burge | By _____<br>　　C. Gerard Nalezny |
| Address:<br>736 Whalers Way Ste F100<br>Fort Collins, CO 80525<br>Attention: Lori D. Burge | Address:<br>Verus Bank of Commerce<br>3700 South College, Unit 102<br>Fort Collins, CO  80525<br>Attention: _____ |

EXHIBIT A

## DESCRIPTION OF COLLATERAL

# Exhibit A

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

    (A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

    (B) All products and produce of any of the property described in this Collateral section.

    (C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

    (D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

    (E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

# CREDIT AGREEMENT

Dated as of September 30, 2013

Colorado Customware Inc. (the "Borrower"), and Verus Bank of Commerce (the "Lender"), hereby agree as follows:

## ARTICLE I
## DEFINITIONS

1.1     <u>Definitions</u>.  For all purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)     the terms defined in this Article have the meanings assigned to them in this article, and include the plural as well as the singular; and all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with GAAP.

"Advance" has the meaning given in Section 2.1.

"Advance Cutoff Date" means earlier of (a) December 15, 2013 or (b) closing of sale of substantially all of Borrowers' assets.

"Agreement" means this Credit Agreement, as amended, supplemented or restated from time to time.

"Commitment" means the Lender's commitment to make Advances to or for the Borrower's account pursuant to Article II.

"Credit Facility" means the credit facility being made available to the Borrower by the Lender pursuant to Article II.

"Default" means an event that, with giving of notice or passage of time or both, would constitute an Event of Default.

"Default Period" means any period of time beginning on the first day on which a Default or Event of Default has occurred and ending on the date the Lender notifies the Borrower in writing that such Default or Event of Default has been cured or waived.

"Event of Default" has the meaning specified in Section 5.1.

"Loan Documents" means this Agreement, the Note and the Security Documents.

"Maturity Date" means earlier of (a) December 15, 2013 or (b) closing of sale of substantially all of Borrowers' assets.

"Maximum Line" means $100,000.

"Note" means the Borrower's revolving promissory note, payable to the order of the Lender in substantially the form of Exhibit A hereto and any note or notes issued in substitution therefor, as the same may hereafter be amended, supplemented or restated from time to time.

"Obligations" means all indebtedness of the Borrower arising under this Agreement, the Note or any other loan or credit agreement or guaranty between the Borrower and the Lender, whether now in effect or hereafter entered into.

"Security Agreement" means the security agreement of even date herewith, executed by the Borrower for the benefit of the Lender.

"Security Documents" means this Agreement, the Security Agreement, and any other document delivered to the Lender from time to time to secure the Obligations, as the same may hereafter be amended, supplemented or restated from time to time.

"Termination Date" means the earliest of (i) the Maturity Date, (ii) the date the Borrower terminates the Credit Facility, or (iii) the date the Lender demands payment of the Obligations after an Event of Default pursuant to Section 5.2.

1.2   Cross References.  All references in this Agreement to Articles, Sections and subsections, shall be to Articles, Sections and subsections of this Agreement unless otherwise explicitly specified.

ARTICLE II
AMOUNT AND TERMS OF THE CREDIT FACILITY

2.1   Advances.  The Lender agrees, on the terms and subject to the conditions herein set forth, to make advances (the "Advances") to the Borrower from time to time during the period beginning on the date all of the conditions set forth in Section 3.1 are satisfied or waived in writing by the Lender and ending on the Advance Cutoff Date.  The Lender shall have no obligation to make an Advance if, after giving effect to such requested Advance, the sum of the outstanding and unpaid Advances would exceed the Maximum Line.  Upon fulfillment of the applicable conditions set forth in Article III, and within 10 days of any request for an Advance, the Lender shall disburse the proceeds of such requested Advance by wire or other form of immediately available funds, as Borrower and Lender shall agree from time to time.

2.2   Interest; Default Interest; Usury.

(a)   *Interest*.  The outstanding principal balance of the Note shall bear interest at ten percent (10%) per annum.  Interest accruing on the Note shall be due and payable in accordance with Section 2.5(a).

(b)   *Default Interest*.  At any time during any Default Period, in the Lender's sole discretion and without waiving any of its other rights and remedies, the principal of the Advances outstanding from time to time shall bear interest at twelve percent (12%) per annum, effective for any periods designated by the Lender from time to time during that Default Period.

(c) *Usury*. In any event no rate change shall be put into effect which would result in a rate greater than the highest rate permitted by law.

2.3 Fees. [Reserved].

2.4 Computation of Interest. Interest accruing on the outstanding principal balance of the Advances and fees hereunder outstanding from time to time shall be computed on the basis of actual number of days elapsed in a year of 360 days. Interest shall accrue monthly.

2.5 Payment of Note. The outstanding principal balance of the Note and accrued interest thereon shall be due and payable as follows: On the Termination Date, the entire unpaid principal balance of the Note, and all unpaid interest accrued thereon, shall in any event be due and payable.

2.6 Voluntary Prepayment; Reduction of the Maximum Line; Termination of the Credit Facility by the Borrower. The Borrower may prepay the Advances in whole at any time or from time to time in part.

2.7 Payment. All payments to the Lender made in immediately available funds shall be applied to the Obligations upon receipt by the Lender. The Lender may hold all payments not constituting immediately available funds for three (3) days before applying them to the Obligations.

## ARTICLE III
## CONDITIONS OF LENDING

3.1 Discretionary Funding. Advances may be made in Lender's sole discretion.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES

The Borrower represents and warrants to the Lender as follows:

4.1 Authorization of Borrowing. The execution, delivery and performance by the Borrower of the Loan Documents and the borrowings from time to time hereunder have been duly authorized by all necessary action, if any, of the Borrower's managers and members.

4.2 Legal Agreements. This Agreement constitutes and, upon due execution by the Borrower, the other Loan Documents will constitute the legal, valid and binding obligations of the Borrower, enforceable against the Borrower in accordance with their respective terms.

## ARTICLE V
## EVENTS OF DEFAULT, RIGHTS AND REMEDIES

5.1 Events of Default. "Event of Default", wherever used herein, means any one of the following events:

(a) Default in the payment of the Obligations when they become due and payable;

(b) An event of default shall occur under any Security Document or under any other security agreement, mortgage, deed of trust, assignment or other instrument or agreement securing any obligations of the Borrower hereunder or under any note.

5.2 Rights and Remedies. During any Default Period, the Lender may exercise any or all of the following rights and remedies:

(a) the Lender may, by notice to the Borrower, declare the Commitment to be terminated, whereupon the same shall forthwith terminate;

(b) the Lender may, by notice to the Borrower, declare the Obligations to be forthwith due and payable, whereupon all Obligations shall become and be forthwith due and payable, without presentment, notice of dishonor, protest or further notice of any kind, all of which the Borrower hereby expressly waives;

(c) the Lender may, without notice to the Borrower and without further action, apply any and all money owing by the Lender to the Borrower to the payment of the Obligations;

(d) the Lender may exercise and enforce its rights and remedies under the Loan Documents; and

(e) the Lender may exercise any other rights and remedies available to it by law or agreement.

Notwithstanding the foregoing, upon the occurrence of an Event of Default described in subsections (b) or (c) of Section 5.1, the Obligations shall be immediately due and payable automatically without presentment, demand, protest or notice of any kind.

ARTICLE VI
MISCELLANEOUS

6.1 No Waiver; Cumulative Remedies. No failure or delay by the Lender in exercising any right, power or remedy under the Loan Documents shall operate as a waiver thereof; nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy under the Loan Documents. The remedies provided in the Loan Documents are cumulative and not exclusive of any remedies provided by law.

6.2 Amendments, Etc. No amendment, modification, termination or waiver of any provision of any Loan Document or consent to any departure by the Borrower therefrom shall be effective unless the same shall be in writing and signed by the Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. No notice to or demand on the Borrower in any case shall entitle the Borrower to any other or further notice or demand in similar or other circumstances.

6.3     **Addresses for Notices, Etc.**  Except as otherwise expressly provided herein, all notices, requests, demands and other communications provided for under the Loan Documents shall be in writing and shall be (a) personally delivered, (b) sent by first class United States mail, (c) sent by overnight courier of national reputation, or (d) transmitted by telecopy, in each case addressed or telecopied to the party to whom notice is being given at its address or telecopier number as set forth below:

If to the Borrower:    Lori D. Burge
                       736 Whalers Way Ste F100
                       Fort Collins, CO 80525
                       Telecopier: _____
                       Attention: _____

If to the Lender:      Gerard Nalezny
                       Verus Bank of Commerce
                       3700 South College, Unit 102
                       Fort Collins, CO 80525
                       Telecopier: _____
                       Attention: _____

or, as to each party, at such other address or telecopier number as may hereafter be designated by such party in a written notice to the other party complying as to delivery with the terms of this Section. All such notices, requests, demands and other communications shall be deemed to have been given on (a) the date received if personally delivered, (b) when deposited in the mail if delivered by mail, (c) the date sent if sent by overnight courier, or (d) the date of transmission if delivered by telecopy, except that notices or requests to the Lender pursuant to any of the provisions of Article II shall not be effective until received by the Lender.

6.4     **Execution in Counterparts.**  This Agreement and other Loan Documents may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same instrument.

6.5     **Binding Effect; Assignment; Complete Agreement.**  The Loan Documents shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns, except that the Borrower shall not have the right to assign its rights thereunder or any interest therein without the Lender's prior written consent. This Agreement, together with the Loan Documents, comprises the complete and integrated agreement of the parties on the subject matter hereof and supersedes all prior agreements, written or oral, on the subject matter hereof.

6.6     **Severability of Provisions.**  Any provision of this Agreement which is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

6.7 <u>Headings</u>. Article and Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

6.8 <u>Governing Law; Jurisdiction, Waiver of Jury Trial</u>. The Loan Documents shall be governed by and construed in accordance with the substantive laws (other than conflict laws) of the State of Colorado. This Agreement shall be governed by and construed in accordance with the substantive laws (other than conflict laws) of the State of Colorado. **THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED ON OR PERTAINING TO THIS AGREEMENT.**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

| COLORADO CUSTOMWARE INC. | VERUS BANK OF COMMERCE |
|---|---|
| By:_____ | By:_____ |
| Its:_____ | Its:_____ |

**Exhibit A to Credit Agreement**

**PROMISSORY NOTE**

$100,000                                                                                                    Ft. Collins, Colorado
                                                                                                                 September 30, 2013

   For value received, the undersigned, Colorado Customware Inc. (the "Borrower"), hereby promises to pay on the Termination Date under the Credit Agreement (defined below), to the order of Verus Bank of Commerce (the "Lender"), at its office in Fort Collins, Colorado or at any other place designated at any time by the holder hereof, in lawful money of the United States of America and in immediately available funds, the principal sum of One hundred thousand Dollars ([$100,000]) or, if less, the aggregate unpaid principal amount of all Advances made by the Lender to the Borrower under the Credit Agreement (defined below) together with interest on the principal amount hereunder remaining unpaid from time to time, computed on the basis of the actual number of days elapsed and a 360-day year, from the date hereof until this Note is fully paid at the rate from time to time in effect under the Credit Agreement of even date herewith (as the same may hereafter be amended, supplemented or restated from time to time, the "Credit Agreement") by and between the Lender and the Borrower. The principal hereof and interest accruing thereon shall be due and payable as provided in the Credit Agreement. This Note may be prepaid only in accordance with the Credit Agreement.

   This Note is issued pursuant, and is subject, to the Credit Agreement, which provides, among other things, for acceleration hereof. This Note is the Note referred to in the Credit Agreement. This Note is secured, among other things, pursuant to the Credit Agreement, and the Security Documents as therein defined, and may now or hereafter be secured by one or more other security agreements, mortgages, deeds of trust, assignments or other instruments or agreements.

   The Borrower hereby agrees to pay all costs of collection, including attorneys' fees and legal expenses in the event this Note is not paid when due, whether or not legal proceedings are commenced.

   Presentment or other demand for payment, notice of dishonor and protest are expressly waived.

                COLORADO CUSTOMWARE INC.

                By:_____
                Its:_____